Jonathan J. CARLE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 95–CF–838, 96–CO–1094.

District of Columbia Court of Appeals.

Argued Nov. 12, 1997.
Decided Jan. 15, 1998.

Deborah A. Persico, Washington. DC, for appellant.

Rachel Adelman–Pierson, Assistant United States Attorney, with whom Eric H. Holder,

Jr., United States Attorney at the time, and John R. Fisher, Assistant United States Attorney, were on the brief, for appellee.

Before WAGNER, Chief Judge, and FARRELL and KING, Associate Judges.

FARRELL, Associate Judge:

A jury found appellant guilty of second-degree murder while armed. On appeal, his only contentions arise from the fact that under the jury system plan (Jury Plan) adopted by the Superior Court of the District of Columbia, persons who have been convicted of felonies may not serve on juries for a period of ten years after completion of their sentences, including probation and parole. Appellant argues that this ten-year exclusion conflicts with the governing statute, D.C.Code § 11–1906(b)(2)(B) (1995). He further contends that the trial court abused its discretion in denying his post-trial request for funds to retain a statistician to determine the impact of the convicted felon exclusion and thereby support a claim that the ban violates the fair cross-section requirement of the Sixth and (as applied to the grand jury) Fifth Amendments. His related argument is that his trial counsel's failure to request those funds before trial in aid of a motion to dismiss the indictment constitutes ineffective assistance of counsel. We affirm.

## I.

The facts supporting appellant's conviction are not disputed. According to evidence which the jury credited, appellant stabbed the victim to death following the last of a series of altercations between the two men that stemmed from an argument during a one-on-one basketball game.

Before trial, appellant moved to dismiss the indictment on the ground that the ten-year exclusion of convicted felons under the District's Jury Plan contravened D.C.Code § 11–1906 and violated the Fifth and Sixth Amendments. He asserted that "an overwhelmingly large proportion of the potential jurors excluded under the [current] process ... are African–American ... and male." Providing no affidavit or other factual support for this claim, he asked the court merely to "take judicial notice" of the resultant underrepresentation "since your indigent [d]efendant does not have funds to conduct a sophisticated poll that the majority of the individuals excluded would be ... African–America[n]." The government opposed the motion and the court denied it.

Following trial, appellant through new counsel[1] filed an ex parte request for the trial court to authorize him to hire a named statistician for $2475 to assist him in pursuing a claim that trial counsel had been ineffective in not submitting statistical evidence that African–American men are systematically excluded from District juries. The trial court directed appellant to supplement his motion by addressing

(1) whether "convicted felons" or "African–American males" are a "distinctive group" or a "cognizable group [protected under applicable constitutional standards]"; and

(2) whether the services of the expert statistician are "of an unusual character or duration" [citing D.C.Code § 11–2605(c)] such that funds in excess of the statutory limitation are necessary.

Appellant responded in a brief which, like the original motion, offered no factual support for the claimed racial disparity but said, in conclusory fashion, that such support could be obtained by "complicated statistical analyses of data from various sources, including census reports and computer-generated juror information," which "[c]ounsel [was] not qualified to analyze." The trial court denied the motion to engage the named expert at public expense, concluding that appellant's claim of ineffective assistance would fail as a matter of law, since there was no authority for his position that African–American males are a "distinctive group" for purposes of constitutional fair cross-section analysis.

Appellant moved to reconsider, conceding that the case law did not support his claim as

1. Appellant had noted an appeal from the conviction, and new counsel was appointed to repre-

sent him for that purpose.

to African–American males alone but asserting that "systematic exclusion of African–American males is systematic exclusion of African–Americans." In other words, as a new basis for hiring a statistician, he claimed that the Jury Plan's felony exclusion systematically excluded African–Americans generally. The court denied the motion, noting that appellant had "support[ed] this cause with even less than his previous grounds."

Appellant then formally moved to vacate his sentence under D.C.Code § 23–110 (1996), alleging ineffective assistance of counsel as described earlier and renewing the request for investigative services in support of the claim. After the court denied the motion without a hearing, this court consolidated the appeal from that order with the direct appeal.

## II.

D.C.Code § 11–1904(a) (1995) provides that "[t]he Board of Judges [of the Superior Court] shall adopt, implement, and as necessary modify, a written jury system plan for the random selection and service of grand and petit jurors in the Superior Court consistent with the provisions of this chapter."[2] The Jury Plan must "provide procedures for the random selection and qualification of grand and petit jurors from [a] master juror list," subject to the specific qualifications of § 11–1906(b), which state in relevant part:

(1) An individual shall be qualified to serve as a juror if that individual—

(A) is a resident of the District of Columbia;

(B) is a citizen of the United States;

(C) has attained the age of 18 years; and

(D) is able to read, speak, and understand the English language.

(2) An individual *shall not* be qualified to serve as a juror—

. . .

(B) if that individual has been convicted of a felony or has a pending felony or misdemeanor charge, except that an individual disqualified for jury service by reason of a felony conviction *may qualify* for jury service *not less than* one year after the completion of the term of incarceration, probation, or parole following appropriate certification under procedures set out in the jury system plan.

D.C.Code § 11–1906 (emphases added).

The Jury Plan adopted by the Board of Judges implements § 11–1906(b)(2)(B) by disqualifying from jury service

[p]erson[s] convicted of a felony[,] . . . except that individuals disqualified for jury service by reason of a felony conviction are qualified for jury service *ten years* after the completion of their entire sentence, including incarceration, probation and parole, or at such time as their civil rights have been restored.

Jury Plan for the Superior Court of the District of Columbia § 7(f) (emphasis added).

■ Appellant's first argument, a purely statutory one, is that the Jury Plan's ten-year exclusion of convicted felons contradicts what he asserts is a one-year limit on exclusion prescribed by § 11–1906(b)(2)(B) before a felon must be qualified like any other resident and citizen under subsection (b)(1). In a word, he regards the one-year exclusion of subsection (b)(2)(B) as a ceiling and not a floor. The plain language of the statute refutes this reading. It states that a convicted felon "may," not "shall," be qualified for jury service after the mandatory one-year exclusion.[3] And the length of exclusion is expressly said to be "not less than one year," which in plain English cannot reasonably be translated to mean one year but not more. Since the Board of Judges is entrusted otherwise with adopting a Jury Plan consistent with the statute and defining the "procedures for the . . . qualification of . . . jurors;" § 11–

---

2. "The adopted plan and any modifications shall be subject to a 30–day period of review by Congress." § 11–1904(a). The Superior Court's Jury Plan was submitted to Congress in accordance with this provision.

3. "[W]hen the same Rule uses both 'may' and 'shall,' the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory." *Anderson v. Yungkau,* 329 U.S. 482, 485, 67 S.Ct. 428, 430, 91 L.Ed. 436 (1947).

1906(a), the only natural meaning of the statute is that the Board of Judges may lift the exclusion after one year (but not less) or later, as it sees fit. *See Peoples Drug Stores v. District of Columbia,* 470 A.2d 751, 754 (D.C.1983) (en banc) (court applies plain meaning of statute unless doing so would produce "a result completely at variance with the [statutory] purpose").

## III.

Appellant's twofold attack on his trial attorney's failure to request funds for investigative services pursuant to D.C.Code § 11–2605(a) (1995) (claimed to be ineffective assistance of counsel)[4] and on the trial court's refusal to grant him those services post-trial depends on a single proposition: that statistical analysis by an expert would reveal systematic exclusion of African–American males from jury service in the District by operation of the Jury Plan's ten-year exclusion of felons. For that fact (even if it were proven) to be legally significant, each of three propositions must be true: (1) African–American males are a "distinctive group" for purposes of the fair cross-section requirement of the Fifth and Sixth Amendments; (2) the sub-set of African–American males excluded by operation of the Jury Plan—*i.e.,* convicted felons—is likewise a "distinctive group"; and (3) the systematic exclusion of this group does not advance a significant state interest related to the proper functioning of the jury system. *See generally, Lockhart v. McCree,* 476 U.S. 162, 174–75, 106 S.Ct. 1758, 1765–66, 90 L.Ed.2d 137 (1986). Ultimately, we need not consider the validity of the first proposition, because neither the second nor third is tenable.

"Fundamental to the Fifth Amendment guarantee of indictment by a grand jury and the Sixth Amendment guarantee of a jury trial is that jurors be selected from a fair cross-section of the community." *Sweet v. United States,* 449 A.2d 315, 323 (D.C. 1982). To establish a prima facie fair cross-section violation, a defendant must show:

(1) that the group alleged to be excluded is a "distinctive group" in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). Even if a defendant succeeds in these showings, however, the state can justify its procedures by demonstrating that they clearly advance "a significant state interest." *Id.* at 367, 99 S.Ct. at 670.

This court has stated that "a 'distinctive' group [for fair cross-section purposes] must possess a unique 'perspective on human events' or have an outlook, a viewpoint, or an experience not shared by other segments of society." *Sweet,* 449 A.2d at 324 (citations omitted). Under a similar test commonly applied by the federal courts, a defendant claiming "distinctive" status for a group must show

(1) that the group is defined and limited by some factor (*i.e.,* that the group has a definite composition such as by race or sex); (2) that a common thread or basic similarity in attitude, ideas, or experience runs through the group; and (3) that there is a community of interests among members of the group such that the group's interest cannot be adequately represented if the group is excluded from the jury selection process.

*Willis v. Zant,* 720 F.2d 1212, 1216 (11th Cir.1983); *see also, e.g., United States v. Fletcher,* 965 F.2d 781, 782 (9th Cir.1992); *United States v. Canfield,* 879 F.2d 446, 447 (8th Cir.1989). Applying these standards, no court has yet held that African–American males constitute a "distinctive group" for fair cross-section purposes. Courts that have considered and rejected the classification have done so essentially for the reason stated by the court in *United States v. Greer,* 900 F.Supp. 952 (N.D.Ill.1995):

[A] rationale certainly underlying *Duren* and its progeny is ensuring that minority

---

4. Section 11–2605(a) permits the trial court to order investigative services upon finding that the services are necessary and the person seeking them is financially unable to afford them.

groups which have been historically discriminated against are not systematically excluded from jury pools. *Duren* already covers what are arguably the two largest such groups, African–Americans and women, in a way that reasonably ensures basic fairness and impartiality. The Court concludes that recognizing the subgroup of African–American males as a *Duren* distinctive group would amount to pursuing a level and type of representativeness that is simply not demanded by the Sixth Amendment, which requires only a cross-section that is fair, not one perfectly attuned to multiple variables.

*Id.* at 957–58. *See also United States v. Dennis,* 804 F.2d 1208, 1210 (11th Cir.1986); *United States v. Blair,* 493 F.Supp. 398, 406–07 (D.Md.1980).

■■■ To decide this case, however, we need not resolve that issue. The exclusion appellant challenges is not of African–American males generally, but of those excluded by the Jury Plan's restriction on service by convicted felons. As to this group, the Supreme Court's observation in *Lockhart v. McCree,* is pertinent: "[G]roups defined solely in terms of shared attitudes that would ... substantially impair members of the group from performing one of their duties as jurors ... are not 'distinct groups' for fair-cross-section purposes." 476 U.S. at 174, 106 S.Ct. at 1765. The presumptively "shared attitudes" of convicted felons as they relate to the goal of juror impartiality are a primary reason for the exclusion which the District's Jury Plan typifies. As one court has stated:

> The Legislature could reasonably determine that a person who has suffered the most severe form of condemnation that can be inflicted by the state—a conviction of felony and punishment therefor—might well harbor a continuing resentment against "the system" that punished him and an equally unthinkable bias in favor of the defendant on trial, who is seen as a fellow underdog caught in its toils. Because these antisocial feelings would often be consciously or subconsciously concealed, the Legislature could further conclude that the risk of such prejudice infecting the trial outweighs the possibility of detecting it in jury selection proceedings. The ex-

clusion of ex-felons from jury service thus promotes the legitimate state goal of assuring impartiality of the verdict.

*Rubio v. Superior Court of San Joaquin County,* 24 Cal.3d 93, 154 Cal.Rptr. 734, 593 P.2d 595 (1979). *See also* 28 U.S.C. § 1865(b)(5) (disqualifying forever from jury service a person convicted of "a crime punishable by imprisonment for more than one year and [whose] civil rights have not been restored"); H.R. REP. No. 90–1076 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1792, 1796 (disqualification under 28 U.S.C. § 1865(b)(5) is intended to assure the "probity" of the jury). Thus, whether one analyzes for "distinctive group" status or asks instead whether the state has a significant interest in limiting the right of convicted felons to sit as jurors, both answers support the constitutionality of the Jury Plan's exclusion. *See also United States v. Barry,* 71 F.3d 1269, 1273–74 (7th Cir.1995); *United States v. Arce,* 997 F.2d 1123, 1127 (5th Cir.1993); *United States v. Greene,* 995 F.2d 793, 797–98 (8th Cir.1993).

Since appellant's challenge to § 11–1906(b)(2)(B) as implemented by the Jury Plan fails as a matter of law, the trial court did not abuse its discretion in denying him public funds to attempt to establish the effect of the exclusion upon the composition of District of Columbia juries. *See Doe v. United States,* 583 A.2d 670, 674–75 (D.C.1990); *Dobson v. United States,* 426 A.2d 361, 367–68 (D.C.1981); *cf. Anaya v. Hansen,* 781 F.2d 1, 9 (1986) (since defendant failed to show as a matter of law "that young adults, blue collar workers, or less educated persons are cognizable, her jury pool challenge would have failed regardless of the sophistication of her statistical showing of underrepresentation"). And, since appellant could prove no facts entitling him to relief, the trial court did not err in denying without a hearing his motion for a new trial based on a claim of ineffective assistance of counsel. *See Head v. United States,* 626 A.2d 1382, 1385 (D.C. 1993) (citations omitted).

*Affirmed.*