SYLLABUS

*This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.*

**State v. Walter J. Gilliano (S-73/74-25) (091601)**

**Decided by Order January 21, 2026 -- Opinion Filed February 24, 2026**

**CHIEF JUSTICE RABNER, writing for a unanimous Court.**

By order dated January 21, 2026, the Court directed that defendant Walter Gilliano's trial resume with the jury panel that had already been summoned. This opinion states the reasons for that ruling.

Defendant's trial was scheduled to begin with jury selection on January 13, 2026. Notices had been sent to potential jurors about eight weeks earlier, consistent with ordinary practice. Out of the 801 prospective jurors, nine responded to a pre-screening questionnaire that they had been convicted of an indictable offense. Under state law, "[e]very person summoned as a juror . . . shall not have been convicted of any indictable offense under the laws of this State, another state, or the United States." N.J.S.A. 2B:20-1(e). The nine individuals were therefore excused from service.

On January 11, 2026, two days before jury selection, Governor Philip D. Murphy signed Executive Order 411 (EO 411), which granted clemency -- to the extent needed to restore the ability to qualify for jury service -- to certain individuals with a conviction of an indictable offense. Following the Executive Order, the State asked the court to strike the existing jury pool and summon a new one, or to direct the nine individuals who had been disqualified to appear for jury selection the next day. The Presiding Judge of the Criminal Division denied the requests.

The parties filed for emergent relief before the Court on January 14, and the Court asked for expedited briefing and additional information on certain points. Defendant argues that EO 411 implicates his constitutional right to a fair and impartial jury selected from a representative cross-section of the community; that including individuals who have been convicted of an indictable offense remediates "established exclusions of minority racial groups" from jury service; and that EO 411 must apply to ongoing jury selections conducted immediately after the order was issued.

**HELD:** Because defendant could not establish that the existing jury pool violated his right to trial by a jury drawn from a representative cross-section of the community, the Court agreed with the trial court's determination not to dismiss the jury pool that had been summoned before the Governor issued EO 411.

1

1.  To establish a violation of the fair-cross-section requirement, defendants must (1) "identify a constitutionally cognizable group"; (2) "prove substantial underrepresentation over a significant period of time"; and (3) "show discriminatory purpose." State v. Dangcil, 248 N.J. 114, 141 (2021).  If a defendant establishes all three prongs, the State must demonstrate "that a significant state interest is manifestly and primarily advanced by those aspects of the jury selection process that result in disproportionate exclusion of the distinctive group." Ibid.  (pp. 8-9)

2.  A "constitutionally cognizable group" "must be one that has been historically excluded, on the basis of stereotypical prejudices, from full participation in the significant duties and privileges of American citizenship." Id. at 143.  The group defendant points to is limited to (1) individuals granted clemency for convictions of an indictable offense (2) under New Jersey law, (3) which occurred on or before January 10, 2026, (4) who have satisfied the non-monetary aspects of their sentences.  The group identified in EO 411, therefore, is not readily defined by the principles recounted above.  It is a specific group of individuals with New Jersey convictions for indictable offenses during a particular time frame.  As to the second prong, the record in this appeal refers to nine individuals who were excluded from the jury pool because they reported they had an indictable conviction.  Although defendant and the Public Defender presented data about racial disparities in the rate of incarceration, the present record does not contain proof of underrepresentation of a cognizable group within jury pools drawn from the community for a substantial period of time.  Third, defendant contends that the group's lack of representation is due to systematic exclusion.  The Court reviews the neutral process of summoning jurors and notes that defendant has not identified any discriminatory animus in the ordinary procedures followed.  Defendant has not carried his burden to establish a violation of the fair-cross-section requirement.  His claim under the Sixth Amendment thus cannot prevail.  (pp. 10-18)

3.  Jury management offices could not anticipate the terms of EO 411 weeks or months in advance.  Even if they could, play in the joints of the jury-selection process is necessary in order to accommodate the practical problems of judicial administration.  Otherwise, for example, defendants might argue that a constitutional violation can be found because individuals turned eighteen years old weeks or months after jury summonses had been sent.  Moreover, nothing in the Executive Order, including the fact that it took effect immediately, suggests the Governor intended to halt all criminal jury trials statewide for two months.  The Court reviews the steps the Administrative Office of the Courts (AOC) has taken to implement EO 411 and asks the Director of the AOC to continue to monitor the current process to summon jurors and make any additional administrative changes that may be needed.  (pp. 20-21)

The request for emergent relief is **DENIED**.

**JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in CHIEF JUSTICE RABNER's opinion.**

State of New Jersey,

Plaintiff,

v.

Walter J. Gilliano,

Defendant.

On Emergent Applications
Pursuant to Rule 2:9-8.

| Decided by Order | Opinion Filed |
| --- | --- |
| January 21, 2026 | February 24, 2025 |

Andrew B. Johns, Gloucester County Prosecutor, attorney for plaintiff (Alec Gutierrez, Chief Assistant Prosecutor, and Katherine Mika, Deputy Chief Assistant Prosecutor, of counsel and on the brief).

Christopher St. John, attorney for defendant (Christopher St. John, and Tess A. Berkowitz, on the brief).

Jennifer Davenport, Acting Attorney General of New Jersey, appearing as amicus curiae (Jeremy M. Feigenbaum, Solicitor General, Michael L. Zuckerman, Deputy Solicitor General, Claudia J. Demitro, Assistant Attorney General, and Jennifer E. Kmieciak, David M. Galemba, Amanda G. Schwartz, and Naima P. Drecker-Waxman, Deputy Attorneys General, of counsel and on the brief).

1

Jennifer N. Sellitti, Public Defender of New Jersey, appearing as amicus curiae (Rachel A. Neckes and Margaret McLane, Assistant Deputy Public Defenders, of counsel and on the brief).

CHIEF JUSTICE RABNER delivered the opinion of the Court.

On January 11, 2026, Governor Philip D. Murphy issued an executive order that granted clemency -- to the extent needed to restore the ability to qualify for jury service -- to certain individuals with a conviction of an indictable offense.

Defendant's trial was slated to start two days later, on January 13. Consistent with standard practice, prospective jurors received a jury summons and questionnaire about eight weeks earlier. In response, nine individuals reported they had a prior conviction for an indictable criminal offense, and they were excused from jury service.

On the morning of trial, the parties asked the trial court to summon a new jury pool. The court denied the request, and the parties sought emergent appellate review. Because defendant could not establish that the existing jury pool violated his "right to trial by a jury drawn from a representative cross-section of the community," State v. Dangcil, 248 N.J. 114, 140 (2021) (quoting State v. Andujar, 247 N.J. 275, 296-97 (2021)), we agreed with the trial court's determination. We therefore issued an order on January 21 directing that

defendant's trial resume with the jury panel that had already been summoned. This opinion states the reasons for the Court's ruling.

I.

A.

On December 8, 2022, a grand jury in Gloucester County indicted defendant Walter Gilliano for murder and multiple firearms offenses. As noted above, his trial was scheduled to begin with jury selection on January 13, 2026. Notices had been sent to potential jurors about eight weeks earlier, around November 17, 2025. Out of the group of 801 prospective jurors, nine responded to a pre-screening questionnaire that they had been convicted of an indictable offense.

Under state law, "[e]very person summoned as a juror . . . shall not have been convicted of any indictable offense under the laws of this State, another state, or the United States." N.J.S.A. 2B:20-1(e). The nine individuals were therefore excused from service.

B.

On January 11, 2026, two days before jury selection, Governor Murphy signed Executive Order 411 (EO 411), available at https://nj.gov/infobank/eo/056murphy/pdf/EO-411.pdf. The order granted executive clemency for "a conviction of an indictable offense under the laws of this State . . . to the

3

extent necessary to restore [any individual's] right or ability to qualify for jury service upon the discharge of the non-monetary components of their criminal sentence." EO 411, ¶ 1.

EO 411 applied to "any term of incarceration, probation, or parole, provided that . . . [t]he disqualifying conviction occurred on or before January 10, 2026." Ibid. The order was not to be "considered a full pardon" and restored only the "ability to qualify for jury service." Id. ¶ 5. Individuals who qualified are still subject to for-cause challenges. Id. ¶ 4. The order took effect "immediately." Id. ¶ 12.

## C.

On the morning of jury selection for defendant's case, the trial court was prepared to clarify for the jury pool that individuals with an indictable New Jersey conviction on or before January 10, 2026 were no longer disqualified from jury service. The parties asked for more information about responses to the pre-screening questionnaire. Upon learning that nine jurors had been excused because of an indictable conviction, the State asked the trial court to rule on whether there was an appropriate cross-section of the community in the current pool.

Ultimately, the State asked the court to strike the existing jury pool and summon a new one. In the alternative, the State requested that the court direct

the nine individuals who had been disqualified to appear for jury selection the next day.

The Presiding Judge of the Criminal Division heard the application and denied the motion to strike the jury pool. The court directed that jury selection continue with the current panel and declined to order the nine prospective jurors to participate in the selection process. The trial court stayed its ruling to allow the State to seek emergent relief.

The State applied for permission to file an emergent motion before the Appellate Division seeking the same relief. Defendant did so as well. The appellate court denied the applications and kept the stay in place to allow the parties to apply to this Court.

D.

The parties filed for emergent relief before the Court on January 14. In an order the next day, the Court asked for expedited briefing and additional information on certain points. The Court also granted the Public Defender and the Attorney General amicus status to participate in the appeal.

II.

The parties' positions have understandably evolved. The Governor signed EO 411 on Sunday, January 11, 2026. Counsel appeared for the start of trial just two days later -- before the State had adequate time to consult with

5

other offices, and before defendant had fully staked out a position. The parties' and amici's helpful briefs to this Court were submitted on January 19.

Defendant now argues that Executive Order 411 implicates his constitutional right to a fair and impartial jury of peers selected from a representative cross-section of the community. He contends that including individuals who have been convicted of an indictable offense remediates "established exclusions of minority racial groups" from jury service. Defendant also submits that EO 411 must apply to ongoing jury selections conducted immediately after the order was issued.

The Public Defender supports defendant's position. The Public Defender argues that empaneling a jury that does not include people granted clemency by EO 411 violates the plain language of the order and defendant's rights to a fair jury and to equal protection.

The State now submits that criminal defendants can only challenge an individual's "non-participation" in jury selection immediately after an order of clemency when there is a violation of the defendant's federal or state constitutional rights. The State contends that individuals with felony convictions are not a cognizable, historically protected group under the Sixth Amendment, and that expanding eligibility for jury service does not "convert previously lawful exclusions" into constitutional violations.

6

The Attorney General argues that the constitutional requirement of a jury drawn from a fair cross-section of the community "serves to protect against invidious discrimination, not to dissect . . . routine jury-management practices." The Attorney General further submits there is no fair-cross-section violation in this case because the individuals covered by EO 411 do not comprise a constitutionally cognizable group and have not experienced "any longstanding underrepresentation." The Attorney General also maintains that exclusions that stem from benign jury-management practices do not present the type of animus or systematic exclusion necessary to establish a constitutional violation.

III.

This appeal stems from an act of executive clemency -- an act of executive mercy. Ex parte Wells, 59 U.S. (18 How.) 307, 311 (1856). The "[p]ower of executive clemency in this country undoubtedly derived from the practice as it had existed in England." Solesbee v. Balkcom, 339 U.S. 9, 12 (1950). That "power has traditionally rested in governors or the President." Ibid.

The power of executive clemency is not subject to judicial review. See In re Petition for Expungement of the Crim. Rec. Belonging to T.O., 244 N.J. 514, 530 (2021) ("[The] power to pardon lies exclusively with the Executive,

7

and the decision to pardon is not subject to judicial review."  (citing State v.

Mangino, 17 N.J. Super. 587, 591 (App. Div. 1952) (declining to review an act

of "executive clemency"))); see also State v. Lagares, 127 N.J. 20, 27 (1992)

("[T]he Constitution grants the Governor unreviewable power to pardon

offenders and to commute judicially-imposed sentences."  (citing N.J. Const.

art. V, § II, ¶ 1; N.J.S.A. 2A:167-4)).

The parties do not challenge the Governor's authority to issue EO 411.

Nor does defendant argue that a change that expands a person's eligibility to

serve on a jury presents a constitutional concern if the change is not

implemented at once.  Defendant instead raises a claim under the Sixth

Amendment -- his "right to trial by a jury drawn from a representative cross-

section of the community."  Dangcil, 248 N.J. at 140; see also Taylor v.

Louisiana, 419 U.S. 522, 528 (1975); Duren v. Missouri, 439 U.S. 357, 359 n.1

(1979).

A.

To establish a violation of the fair-cross-section requirement, defendants

must (1) "identify a constitutionally cognizable group"; (2) "prove substantial

underrepresentation over a significant period of time"; and (3) "show

discriminatory purpose."  Dangcil, 248 N.J. at 141 (quoting State v. Dixon,

8

125 N.J. 223, 232 (1991)).[1]  If a defendant establishes all three prongs, the State must demonstrate "that a significant state interest is manifestly and primarily advanced by those aspects of the jury selection process that result in disproportionate exclusion of the distinctive group."  Ibid. (quoting State v. Ramseur, 106 N.J. 123, 216-17 (1987)).

We address each prong in turn.  First, a constitutionally cognizable group includes, at a minimum, "those defined on the basis of religious

---

[1]    The Public Defender, as amicus, submits that the Court should instead apply the standard the United States Supreme Court advanced in Berghuis v. Smith.  Berghuis requires defendants seeking "[t]o establish a . . . violation of the fair-cross-section requirement" to show that "(1) a group qualifying as 'distinctive' (2) is not fairly and reasonably represented in jury venires, and (3) 'systematic exclusion' in the jury-selection process accounts for the underrepresentation."  559 U.S. 314, 327 (2010) (quoting Duren, 439 U.S. at 364); see also State v. Hightower, 120 N.J. 378, 400-01 (1990) (distinguishing between the showings required for equal protection and fair-cross-section claims); State v. Ramseur, 106 N.J. 123, 215-16 (1987) (same).  Defendant recites the above factors, relying on Ramseur and Duren, but does not challenge the current test outlined in Dixon and Dangcil.

As explained later in this opinion, defendant's claim is directed at an eight-week period during which jury managers and staff excluded individuals with prior convictions from jury pools, consistent with existing law at the time, and several additional days when the Judiciary responded to an executive order it could not have anticipated.  That does not amount to "systematic exclusion." Moreover, defendant has not presented sufficient evidence about the composition of jury venires.  Defendant's challenge would therefore fail under Berghuis, which requires that all three components be met.  We need not address the remaining element.

We decline to reassess the standard in Dixon and Dangcil at this time and await a direct challenge by a party.

9

principles, race, color, ancestry, national origin, and sex." State v. Gilmore, 103 N.J. 508, 526 n.3 (1986), modified in other part, State v. Osorio, 199 N.J. 486, 502-04 (2009). In other words, the "group must be one that has been historically excluded, on the basis of stereotypical prejudices, from full participation in the significant duties and privileges of American citizenship." Dangcil, 248 N.J. at 143 (quoting State v. Bellamy, 260 N.J. Super. 449, 456-57 (App. Div. 1992)).

To be clear, defendant does not challenge the statutory bar to jury service. As noted earlier, the existing prohibition applies to individuals convicted of an indictable offense under the laws of New Jersey, of another state, or of the federal government. N.J.S.A. 2B:20-1(e). Challenges in other jurisdictions have found that similar laws have a rational basis and are not unconstitutional. See, e.g., United States v. Foxworth, 599 F.2d 1, 4 (1st Cir. 1979); United States v. Greene, 995 F.2d 793, 795-98 (8th Cir. 1993); United States v. Arce, 997 F.2d 1123, 1127 (5th Cir. 1993); United States v. Barry, 71 F.3d 1269, 1271-74 (7th Cir. 1995); Carle v. United States, 705 A.2d 682, 686 (D.C. 1998); Rubio v. Super. Ct., 593 P.2d 595, 600 (Cal. 1979); Shows v. State, 267 So. 2d 811, 812 (Miss. 1972).

The constitutionally cognizable group defendant points to is limited to (1) individuals granted clemency for convictions of an indictable offense (2)

10

under New Jersey law, (3) which occurred on or before January 10, 2026, (4) who have satisfied the non-monetary aspects of their sentences. Those with out-of-state or federal convictions before January 11, 2026 are still barred from jury service. The same is true for all individuals convicted of an indictable offense on or after January 11, 2026. The group identified in EO 411, therefore, is not readily defined by the principles recounted above. See Gilmore, 103 N.J. at 526 n.3. It is a specific group of individuals with New Jersey convictions for indictable offenses during a particular time frame.

Defendant relies on EO 411, which points to "hundreds of thousands of individuals" excluded "from jury service . . . in a manner that reflects the disparities of our criminal justice system." EO 411, at 2. The Order also references various steps the Murphy Administration took to reduce "collateral consequences of a conviction . . . , which disproportionately affect Black and Hispanic or Latino New Jerseyans." Id. at 1.

The Executive Order reflects a policy determination by the Governor in the exercise of his authority to grant clemency. As the New Jersey Supreme Court observed more than a century ago, the Executive's authority "is founded on considerations of the public good, and is to be exercised on the ground that the public welfare, which is the legitimate object of all punishment, will be as

11

well promoted by" an act of clemency. Cook v. Bd. of Chosen Freeholders, 26 N.J.L. 326, 333 (Sup. Ct. 1857).

Exercising the power to forgive certain criminal penalties or relieve certain legal consequences of a conviction, however, does not establish constitutional requirements or constitutionally cognizable groups. The time-limited Executive Order here does not do so. Nor does the recommendation of the Committee of the Judiciary Conference on Jury Selection (Committee).

This Court approved the Committee's recommendation that "[t]he Legislature should explore options for an individual who has completed their sentence (including any term of supervision) to be restored to eligibility to serve as a juror, subject to potential challenge for cause or peremptory challenge." Sup. Ct., Administrative Determinations 1, rec. 2 (July 12, 2022), https://www.njcourts.gov/sites/default/files/administrativedeterminations.pdf. We cannot rely on that recommendation to address the legal question this appeal presents.

Second, defendant must "prove substantial underrepresentation over a significant period of time." Dangcil, 248 N.J. at 141 (quoting Dixon, 125 N.J. 232). The record in this appeal refers to nine individuals who were excluded from the jury pool because they reported they had an indictable conviction. We cannot determine whether EO 411 restored the right to jury service for all

12

nine because it is unclear whether their reported convictions stemmed from a violation of New Jersey law, the laws of other states, or federal law. It is also unclear whether others did not respond to the questionnaire because they believed they could not qualify.

In a footnote, defendant cites a statement by the New Jersey Institute for Social Justice, addressing the Committee's report, that Black adults are "12 times more likely to be in prison" than white adults, and are "overrepresented in detainment and incarceration and underrepresented on juries." N.J. Inst. Soc. Just., Statement on Jury Selection Committee Report 2-3 (Apr. 19, 2022), https://www.njcourts.gov/notices/notice-jury-reform-recommendations-of-committee-of-judicial-conference-jury-selection (pp. 51-52).

In addition, the Public Defender, citing the Governor's press release that accompanied EO 411, asserts that more than 350,000 New Jerseyans are now eligible to serve on juries because of Executive Order 411. See Off. of the Governor, Press Release: Governor Murphy Restores Jury Service Rights for People Previously Disqualified Because of a Conviction (Jan. 11, 2026), https://dspace.njstatelib.org/server/api/core/bitstreams/80132004-4caa-413a-82b4-7d9704be4cbe/content. The Public Defender then compares the overall disparity between white (73.6%) and Black (12.7%) residents in Gloucester County with the rate of people convicted in the County -- 61.5% white and

35.4% Black.  See U.S. Census, QuickFacts:  Gloucester County, New Jersey, https://www.census.gov/quickfacts/fact/table/gloucestercountynewjersey# (last visited Feb. 19, 2026); Off. of the Att'y Gen., Criminal Justice Data Dashboard (2025), available at https://www.njoag.gov/justicedata (last visited Feb. 19, 2026) (requiring download and review of data).  The Public Defender contends the data "undoubtedly does not represent all the New Jerseyans living in Gloucester County who had their jury-service rights restored by EO 411" and also submits it confirms the disproportionate effect the criminal justice system has on "Black and Hispanic or Latino New Jerseyans."  The Public Defender also cites data about racial disparities in the rate of incarceration in New Jersey overall.

We do not question the good faith efforts of defendant and the Public Defender in presenting the above data on short notice.  We also recognize that there is no "specific mathematical test for determining when underrepresentation becomes 'substantial' and therefore constitutionally suspect."  Ramseur, 106 N.J. at 217 (discussing equal protection claims).  But the present record does not contain proof of underrepresentation of a cognizable group within jury pools drawn from the community for a substantial period of time.  See id. at 217-23 (discussing examples of and methods to review data on underrepresentation in jury pools).

14

Third, defendant must "show discriminatory purpose" in the jury-selection process "either by the strength of [a] statistical showing or by showing the use of racially non-neutral selection procedures to support the inference of discrimination raised by substantial underrepresentation." Dangcil, 248 N.J. at 141 (emphasis added) (quoting Dixon, 125 N.J. at 232).

To meet that burden, defendant contends that the group's lack of representation is due to systematic exclusion. The Public Defender submits that "continuing to exclude this predominantly Black and Hispanic population of jurors in the face of an Executive Order compelling their inclusion should be seen as nothing short of deliberate discrimination."

Those arguments fall short. The right to serve on a jury is triggered by a summons. Jury managers throughout the state, who are employed by the Judiciary, follow a neutral set of procedures to summon jurors. Drawing on lists of "registered voters, licensed drivers, filers of State gross income tax returns and filers of homestead rebate or credit application forms," N.J.S.A. 2B:20-2(a), each county compiles a single list of prospective jurors.

Jury management offices are then required to send a summons -- a written notice that states the date, time, and place to appear for jury service -- "at least 30 days" before "the juror is to appear." Id. at -8. The Judiciary sends summonses six to eight weeks in advance. N.J. Judiciary Bench Manual

15

on Jury Selection 4 (Dec. 4, 2014) (Bench Manual), https://www.njcourts.gov/ sites/default/files/jurors/njbenchmanual.pdf. According to the Administrative Office of the Courts (AOC), summonses are generally sent each week to enable trials to be conducted on a regular basis throughout the year.

Each summons directs the recipient to complete an online questionnaire within seven days to determine whether the person is eligible for jury service. See N.J. Courts, Complete Your Questionnaire, Sample Postcard Summons, available at https://www.njcourts.gov/jurors/service. A hard copy of the questionnaire follows if the recipient does not respond within twenty-one days. Guide to the New Jersey Judicial Conference on Jury Selection (Guide) A-11, E-1, available at https://www.njcourts.gov/sites/default/files/attorneys/jury-reforms/jury-selection-guide-printedversion.pdf. Summonses pose questions that track the statutory grounds for excuse from jury service. For example, they ask whether a prospective juror is a resident of the county where they are being summoned, can read and understand English, is 18 years old or older, and is a U.S. citizen, among other statutory qualifications. See N.J.S.A. 2B:20-1, Guide at F-3. Summonses also include the following question: "Have you been convicted of or pleaded guilty to an indictable criminal offense? Do not include traffic or disorderly person offenses. State the charge and the year." Guide at F-3.

As responses are received, jury managers and staff contact individual prospective jurors with follow-up questions, if necessary. According to the AOC, nearly all jurors who report they have a prior conviction are contacted. Managers and staff then excuse prospective jurors so that they are not required to take time away from work or personal obligations and travel to court only to learn that they do not qualify and are excused. In this case, the jury management office excused nine prospective jurors from service consistent with existing law at the time. N.J.S.A. 2B:20-1(e) barred the individuals from serving because they had "been convicted of any indictable offense."

The neutral process described above promotes efficiency and convenience to members of the public. See Bench Manual at 4. Defendant has not identified any discriminatory animus in the ordinary procedures followed. See Dangcil, 248 N.J. at 141. And, as set forth below, the process was modified within days of Executive Order 411 in order to comply with it.

We note as well that the trial court in this matter declined to order all nine jurors to report to the courthouse after they had already been excused. The court's decision reflected a practical reality: individuals cannot reasonably be expected to drop everything on a moment's notice to appear for jury selection.

17

For the above reasons, defendant has not carried his burden to establish a violation of the fair-cross-section requirement. His claim under the Sixth Amendment therefore cannot prevail.

B.

The Public Defender also raises an equal protection claim under the Federal and State Constitutions. The office contends that empaneling a jury that does not include people granted clemency by the Executive Order violates defendant's right to equal protection under the law. Defendant did not raise such a challenge. We therefore decline to address it. See Bethlehem Twp. Bd. of Educ. v. Bethlehem Twp. Educ. Ass'n, 91 N.J. 38, 48-49 (1982) (noting that, as a general rule, an amicus "cannot raise issues not raised by the parties"); accord State in Int. of A.A., 240 N.J. 341, 359 n.1 (2020). We also note that the Public Defender's equal protection argument rests on the same considerations identified in Dangcil, which are analyzed above.

C.

We are mindful of other considerations as well. The AOC advises that, at the time EO 411 was signed, summonses had been issued statewide calling on prospective jurors to serve for trials scheduled through the middle of March. The Attorney General represents that 436 criminal jury trials were scheduled to start from January 16 to March 6, 2026. And in a typical month,

18

according to the AOC, jury selection is actually conducted in about 30 criminal cases statewide.

To be sure, had defendant established a Sixth Amendment violation based on the Executive Order, it might well have been necessary to summon a new panel for his trial. But that is not the case, for the reasons set forth above. Beyond that, jury management offices could not anticipate the terms of Executive Order 411 weeks or months in advance. Even if they could, "play in the joints of the jury-selection process is necessary in order to accommodate the practical problems of judicial administration." Hamling v. United States, 418 U.S. 87, 138 (1974). Otherwise, for example, defendants might argue that a constitutional violation can be found because individuals turned eighteen years old weeks or months after jury summonses had been sent. Moreover, nothing in the Executive Order, including the fact that it took effect immediately, suggests the Governor intended to halt all criminal jury trials statewide for two months.

## IV.

Since the Governor issued Executive Order 411 on January 11, 2026, the AOC has taken the following steps to implement it.

On January 13 and 16, the AOC provided guidance for jury managers and staff to ask prospective jurors -- who report they have a conviction for an

19

indictable offense -- revised follow-up questions consistent with Executive Order 411.  On January 15, the AOC updated the "Jurors" page of the Judiciary's website.  It clarifies the necessary qualifications for jury service in a manner that aligns with EO 411 and includes a link to the Executive Order.  See N.J. Courts, Jurors, https://www.njcourts.gov/jurors (in the sections titled "General Jury Information" and "Frequently Asked Questions About Jury Service").  In addition, on January 16, the AOC provided judges guidance for use in the jury selection process, namely, model questions that encompass the content of the Executive Order.

We ask the Director of the AOC to continue to monitor the current process to summon jurors and make any additional administrative changes that may be needed.

## V.

For the reasons set forth above, we agreed with the trial court's determination not to dismiss the jury pool that had been summoned before the Governor issued Executive Order 411.  We therefore denied defendant's request for emergent relief on January 21, 2026, as the Appellate Division had done the week before, and directed the parties to proceed with jury selection and trial.

20

JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in CHIEF JUSTICE RABNER's opinion.